CV 18- 6027                                    ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

RAMON K. JUSINO,                           VITALIANO , J.

        Plaintiff,

        -against-

NOTRE DAME ACADEMY HIGH SCHOOL,
THE ARCHDIOCESE OF NEW YORK,

        Defendants.

------------------------------------------------------------X

**COMPLAINT WITH JURY TRIAL DEMAND**

TISCIONE, M.J.

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION
### (Race, Sex, Age Discrimination and Retaliation)

PLAINTIFF, Ramon K. Jusino, *pro se*, (hereinafter "I, me, my") complaining of the

DEFENDANTS, respectfully shows to this Honorable Court and alleges as follows:

### Introduction

1.    This lawsuit seeks to rectify a severe and pervasive pattern of continuing

harassment based on sex, age, and race discrimination directed at me from my employer,

Notre Dame Academy High School, beginning on May 1, 2015 to the present. This

pattern of continuing harassment has created a hostile working environment for me

which, at times, has seriously affected my health and well-being. I reached out to the

Archdiocese of New York by filing a formal complaint with them about this on

1

December 5, 2017. However, the harassment and discrimination from Notre Dame Academy continues unabated.

## Jurisdiction

2.      This court has original subject matter jurisdiction over claims pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000-17 (race, color, sex, retaliation); and the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634 because they arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

## Venue

3.      Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 5 U.S.C. § 7703(b)(2) as I was employed by Notre Dame Academy High School in the Eastern District of New York at all relevant times, my employment records are maintained by Notre Dame Academy High School in this judicial district, and decisions adverse to my employment that are the subject of this civil action were made in this judicial district.

## Parties

4.      I, the Plaintiff, Ramon K. Jusino, am an employee of Notre Dame Academy High School, currently under suspension without pay as of the drafting of this Complaint, and reside at 27 Amelia Court, Staten Island, New York 10310. I am of Puerto Rican descent in a work environment that is almost entirely white, a male employed in a female-dominated work environment, over the age of 40 and amongst the oldest faculty members at my place of employment, and I have previously complained to my employer

2

about their harassment and discrimination against me based on the above-mentioned protected categories. At all times relevant to this lawsuit, I have been employed as a full-time tenured high school teacher by Defendant Notre Dame Academy High School in Staten Island, New York.

5.      Defendant, Notre Dame Academy High School (hereinafter "Notre Dame Academy"), is my employer, and is located at 134 Howard Avenue, Staten Island, New York 10301. Notre Dame Academy has over 20 employees and is subject to the federal laws cited herein.

6.      Defendant, the Archdiocese of New York (hereinafter "the Archdiocese"), is a Roman Catholic Archdiocese in New York State. It encompasses the boroughs of Manhattan, the Bronx, and Staten Island as well as the counties of Dutchess, Orange, Putnam, Rockland, Sullivan, Ulster, and Westchester within New York State. Its principal place of business is at 1011 First Avenue, New York, New York 10022. According to Article I(E) and Article II of the Collective Bargaining Agreement which governs the terms of my employment, Notre Dame Academy operates under the auspices and supervision of the Archdiocese. Defendants co-administer the school. The Archdiocese is therefore appropriately named as a Defendant in this action. The Archdiocese has over 20 employees and is subject to the federal laws cited herein.

## Statement of Claim

7.      I was subjected to harassment and discrimination from Notre Dame Academy from May 1, 2015 through November 28, 2017. The harassment and discrimination consisted mostly of unwarranted disciplinary memos entered into my

3

performance file during that time. I filed a formal discrimination/harassment complaint with the Archdiocese about this on December 5, 2017.

8.     After grieving the aforementioned complaint through my union, the Federation of Catholic Teachers, Defendants agreed to remove the unfounded disciplinary memos from my Teacher Performance File.

9.     On June 12, 2018 I was permitted to inspect my performance file to ensure that the unwarranted memos have been removed. I considered the entire harassment/discrimination matter to have been amicably resolved at that point.

10.     This action primarily addresses the subsequent retaliatory harassment directed at me by Notre Dame Academy for having previously complained about discrimination and harassment to the Archdiocese in my complaint dated December 5, 2017. The merits of that December 5, 2017 complaint are therefore not at issue in the instant case.

11.     However, Notre Dame Academy has engaged in a continuing campaign of discriminatory harassment against me beginning on May 1, 2015 which continues to this day based on sex, race, age, and retaliation.

12.     This Complaint is about an incident which happened during one of the classes I taught at Notre Dame Academy on May 31, 2018, and the subsequent discrimination and harassment towards me in the aftermath of that incident, which led to my suspension without pay.

13.     Two Notre Dame Academy students were involved in the incident on May 31, 2018 and are referred to throughout this Complaint. They are minors, so their

4

identities must be concealed. Since race is a relevant factor in the instant case, for the sake of simplicity each of these students are referred to herein as "the black student" and "the white student."

## Statement of Facts

14. On December 5, 2017, I filed a complaint with the Archdiocese alleging discrimination and harassment against me by Notre Dame Academy.

15. My December 5, 2017 complaint alleged a continuing pattern of severe and pervasive incidents of harassment by Notre Dame Academy which were intimidating, hostile, and abusive.

16. My December 5, 2017 complaint alleged unlawful discrimination and harassment against me by Notre Dame Academy, on the basis of sex, age, race, and retaliation.

17. My December 5, 2017 complaint alleged eleven separate incidents of harassment which occurred between May 1, 2015 and November 28, 2017.

18. The incidents of harassment which I alleged in my December 5, 2017 complaint were all categorized as follows:

- False allegations intended for my Teacher Performance File which were potentially harmful to my professional reputation;

- Formal written reprimands for failing to perform tasks which I was neither contractually nor legally required to do;

- The characterization of the most benign activities on my part as alarming or appalling indications of poor judgment;

- Defamatory and *per se* slanderous and libelous statements made against me;

- Retaliation for my participation in protected activity; and

- Sex, age, and race discrimination directed at me in violation of Title VII of the 1964 Civil Rights Act, the Age Discrimination in Employment Act of 1967, and Articles XXIX and XXXII.C of the Collective Bargaining Agreement which governs the terms of my employment.

19.     On May 29, 2018, I received an email from the president of The Federation of Catholic Teachers, the union which represents me, indicating that Notre Dame Academy had agreed to remove all the unwarranted written reprimands of which I had complained in my December 5, 2017 complaint to the Archdiocese.

20.     To date, Defendants have not denied, refuted, or controverted any of the allegations that I made in my December 5, 2017 complaint.

21.     On June 12, 2018, I was permitted by Notre Dame Academy to inspect my Teacher Performance File to verify that the unwarranted written reprimands had been removed. They had indeed been removed. I considered the entire matter to be resolved at that point.

22.     On June 20, 2018, I received an unwarranted written reprimand from Sr. Patricia Corley, CND, the President of Notre Dame Academy (hereinafter "Sr. Patricia"). She reprimanded me simply for sending an email to her dated June 4, 2018 in which I reported an incident which happened on May 31, 2018 when a student in my class made

several racially derogatory comments about black people during a class discussion about the sinfulness of racism in my Theology class (hereinafter "the May 31 incident").

23.     Sr. Patricia's June 20, 2018 reprimand to me did not indicate that she had investigated the incident that I reported to her in my June 4, 2018 email to her at all.

24.     I sent that June 4, 2018 email to Sr. Patricia and copied that email to the parents of the white student who made those racially derogatory comments.

25.     On June 26, 2018, after careful consideration, and as a matter of conscience, I sent an email to the parents of the one black student present in my class during the May 31 incident.

26.     I informed the parents of the black student about the fact that their daughter sat there and listened to those racially derogatory comments from the white student during the May 31 incident.

27.     I told the parents of the black student that I had informed Sr. Patricia about the May 31 incident in an email to her dated June 4, 2018 and that Sr. Patricia had refused to reprimand the white student for making those remarks.

28.     I also told the parents of the black student that, in my opinion, Sr. Patricia had handled the May 31 incident in a racially biased way.

29.     In a letter to me dated July 23, 2018 which is labeled "Notice of Suspension with intent to Discharge," Sr. Patricia reveals retaliatory intent by beginning her letter with a reference to my December 5, 2017 discrimination/harassment complaint as follows: "After almost a full school year of accusations, meetings and discussions, you

engaged in one more activity which makes your continued employment at Notre Dame Academy impossible."

30.     The "one more activity" to which Sr. Patricia referred is my June 26, 2018 email telling the parents of the one black student who was in my class about the May 31 incident.

31.     I included in my June 26, 2018 email a copy of the written reprimand from Sr. Patricia dated June 20, 2018 for the parents of the black student involved in the May 31 incident to review.

32.     I also informed the parents of the black student that on June 8, 2018, just four days after I had informed Sr. Patricia about the May 31 incident, Mrs. Kathryn Jaenicke, the Principal of Notre Dame Academy High School, sent me an email directing me to take away an Academic Achievement Award, an end-of-the-school-year award, which I had selected for the black student, solely based on her grades in my class, and give it to someone else. I was in Mrs. Jaenicke's office when she quickly selected another student for that award, who happened to be white.

33.     In an email dated June 28, 2018, the black student's mother sent me an email in which she thanked me for bringing the matter to her attention and informed me that she had requested a meeting with Sr. Patricia and Mrs. Jaenicke.

34.     In that June 28, 2018 email to me, the black student's mother, presumably after speaking with her daughter, did not dispute my account of the May 31 incident at all.

35.    In her letter to me dated July 23, 2018, Sr. Patricia refers to the mother and father of the black student involved in the May 31 incident as "unsuspecting parents."

36.    The generally accepted dictionary definition of the word "unsuspecting" is that it applies to people who have been wronged in some way but do not realize it.

37.    In her Statement of Charges dated August 20, 2018, Sr. Patricia falsely accuses me of inappropriately revealing the identity of the white student involved in the May 31 incident to the parents of the black student. However, Factual Background statement #17 of that Statement of Charges document admits that I did not identify the white student by name in my email to the parents of the black student.

38.    In her Statement of Charges dated August 20, 2018, Sr. Patricia falsely accuses me of inappropriately using the internet to disparage the white student who made the racially derogatory statements in my classroom. I sent only one private personal email addressed to Sr. Patricia and the white student's parents where I named the white student in connection with the May 31 incident. Both Sr. Patricia and the white student's parents are privy to the information I sent them by email. Her charge that I engaged in inappropriate use of the internet to disparage a minor is a gross mischaracterization of what I did and is libelous.

39.    In her Statement of Charges dated August 20, 2018, Sr. Patricia falsely accuses me of publicly disparaging the NDA Administration without basis. As the classroom teacher, I informed the parents of two students, who I felt were directly involved, about the May 31 incident. This is hardly public disparagement.

40.     All of Sr. Patricia's false, exaggerated, and hyperbolized accusations against me in this matter are nothing more than smoke and mirrors designed to mask one simple fact: Sr. Patricia wanted to keep the black student's parents unaware of the May 31 incident.

41.     In her Statement of Charges to me dated August 20, 2018, Sr. Patricia explicitly suspended my employment at Notre Dame Academy for informing the parents of two students about the May 31 incident in my classroom and expressing my opinion to them about how she handled it.

42.     Regarding what students are permitted to say or not say, the Notre Dame Academy Student/Parent Handbook states the following:

> Students attending Notre Dame Academy High School relinquish certain rights they might otherwise be entitled to if they were attending a public school. For example, a student's freedom of speech is limited in many important respects here at our school. Speech, either written or oral, contrary to the Roman Catholic faith, the teachings of the Church or the directives of the local Bishop or Ordinary is prohibited, as is any other speech which is contrary or disruptive to the philosophy and purposes of our school.

43.     The Notre Dame Academy High School Faculty Handbook states the following:

> Notre Dame Academy High School also has a Student/Parent Handbook. This Faculty Handbook along with the Student/Parent Handbook clarifies the roles of teachers and administrators. All of us are responsible to study these policies and to implement them faithfully.

44.     Part of my job as a teacher is to deal with any inappropriate speech from a student, including racially derogatory comments about black people or anyone else.

45.    Sr. Patricia unlawfully reprimanded me, then suspended me, for informing parents of the students involved of the May 31 incident because under The Family Educational Rights and Privacy Act of 1974, parents have a legal right to be informed about whatever transpires in a classroom in connection with their children.

46.    Teachers have a duty to be transparent with parents regarding what their children say or do during class. No secrets.

47.    In my June 26, 2018 email to the mother of the black student involved in the May 31 incident, I sent her a copy of the unwarranted June 20, 2018 written reprimand which I received from Sr. Patricia, along with my written rebuttal to Sr. Patricia about it. In Notre Dame Academy's Statement of Charges against me dated August 20, 2018, one of the main grounds for my suspension is sending that June 26 email in which I allegedly sought "to entangle [the] family in [my] dispute with the School over the reprimand."

48.    Sr. Patricia unlawfully suspended me for sending that June 26, 2018 email because the National Labor Relations Board has specifically held that teachers in private schools have the legal right under Section 7 of the National Labor Relations Act to communicate with parents of their students about their personal grievances with their superiors concerning their working conditions and school policies. *Kinder-Care Learning Centers*, 299 N.L.R.B. 1171, 1177 (1990).

49.    Sr. Patricia's unwarranted reprimand to me dated June 20, 2018 was ostensibly about an email that I had sent her, recounting the May 31 incident. However, the corrective measure that Sr. Patricia provides in that reprimand has nothing to do with

my sending any email. Rather, her corrective measure is aimed instead at my lesson on racism: "Beginning in September, your syllabus, your classroom presentation, your assignments will be far more carefully supervised, an action which I would think unnecessary for a teacher with your experience."

50.    This corrective measure itself is discriminatory and retaliatory because Sr. Patricia seeks to restrict me from discussing racism with my students after my having complained about discrimination from Notre Dame Academy before.

51.    In my rebuttal to the June 20, 2018 reprimand from Sr. Patricia, I told her that her corrective measure "is clearly meant to have a chilling effect on whether and how I teach what the Church says about racism in the future."

52.    In my June 4, 2018 email to Sr. Patricia, I described the May 31 incident to her, in part, as follows:

> In class, when [the White student] said she disagreed that there was such a thing as White privilege, I told her that there were millions and millions of Black people all across America who disagree with her. She then blatantly replied that she didn't care what they thought. She then said that she didn't have anything against Black people as such, she simply resented supporting lazy people, with her tax dollars, who sit on their couches at home and do nothing all day. She then went on to say that she feels uncomfortable riding the bus everyday with Black teens who want to kill her. When I politely pointed out to her that her statements were racially derogatory and insensitive at best, she asked me, "Are you calling me racist?!" I did not pointedly call her a racist. But, her comments in class were certainly offensive and have no place in a Catholic school, or anywhere for that matter. The fact that there was a Black student in the room, did not stop her from making no less than three derogatory statements about Black people within a two or three minute time period, which is consistent with her prior statement that she does not care what Black people think.

53.    In her Charges Supporting Dismissal dated August 20, 2018, without having investigated the veracity of my June 4 email to her at all, Sr. Patricia defends the white student by stating that I was "describing [the white student's comments] as 'disparaging comments about black people' based solely on [my] version of the context and meaning." Sr. Patricia suggested that, within the proper context, it's acceptable for students in her school to openly refer to black people as lazy and violent, and to dismiss what they think or might have to say.

54.    Sr. Patricia's reluctance to investigate the racially derogatory comments which I reported to her, her subsequent defense of those comments, and her written reprimand to me for reporting those comments at all, increased the hostile working environment for me.

55.    In my June 21, 2018 rebuttal to Sr. Patricia's June 20, 2018 written reprimand to me, I wrote:

> There is indeed a fairly serious issue with racial insensitivity at NDA. You should know that I did speak with the one Black student in my class after [the White student] made her disparaging statements. She told me that she was not shocked to hear what [the White student] said because she puts up with racially insensitive statements at NDA all the time, and sometimes from teachers, including a Theology teacher. She says she just smiles through it and pretends it doesn't bother or sadden her. If you take the time to ask some Black students for honest answers as to what it's like to be a Black student at NDA, I think you'd be disappointed and saddened by what they have to say. One of the problems is that no one asks them because no one wants or cares to know.

56.    At no point during the subsequent aftermath of the May 31 incident did Sr. Patricia express any concern whatsoever for what the black student may have

experienced or for the black student's concerns about racial insensitivity at Notre Dame Academy which I reported to her.

57.    In my June 21, 2018 rebuttal to Sr. Patricia's June 20, 2018 written reprimand to me, I wrote:

> For a glaring example of racial insensitivity, and how long it's been happening here at NDA, one need only look to page 15 of the 1990 NDA High School yearbook. On Halloween 1989, four 12th grades [*sic*] were permitted to come to school dressed up as Black people, complete with blackface makeup and Afro wigs. Blackface has a long history in America as a racist caricature by White people to demean and dehumanize Black people. Most people consider this to be one of the worst displays of racism. But at NDA, this was acceptable in 1990 - we're not talking about the 30s or 40s here. Not only were the students permitted to parade around like that while in school, but that photo passed every level of muster and made it into the yearbook.

58.    In Sr. Patricia's Statement of Charges to me dated August 20, 2018, I am accused of the following:

> Mr. Jusino also asserted in his June 21st response that there was a "fairly serious issue with racial insensitivity at NDA." In support of this observation, he referred to a photograph in a yearbook from nearly 30 years ago. This allegation was unrelated to Sr. Patricia's reprimand, which focused on Mr. Jusino's June 4th email to [the white student's] parents.

59.    In Sr. Patricia's July 23, 2018 letter to me labeled Notice of Suspension with intent to Discharge, she wrote:

> On June 21st you sent me a 'rebuttal" regarding the content of letters I discussed with you on June 20, 2018. In that rebuttal you disagreed with several items we had discussed the previous day. ... You went on further to portray Notre Dame Academy as having a "fairly serious issue with racial insensitivity", and give as a "glaring example" reference to a photo from the 1990 Yearbook.

Sr. Patricia unlawfully charged me, in her letter to me dated July 23, 2018, and in her Statement of Charges to me dated August 20, 2018, of complaining to her about racial insensitivity at Notre Dame Academy.

60.     In neither her letter to me dated July 23, 2018, nor her Statement of Charges to me dated August 20, 2018, did Sr. Patricia acknowledge that the blackface photo in Notre Dame Academy High School's 1990 yearbook was a regrettable thing. Rather, she accuses me of wrongdoing simply for pointing it out.

61.     Sr. Patricia was so focused on reprimanding me, that she was stubbornly tone-deaf to any discussion about racial insensitivity or racial bias at all.

62.     In Sr. Patricia's July 23, 2018 letter to me labeled Notice of Suspension with intent to Discharge, she wrote:

> The tipping point, the point of no return, occurred on June 26, 2018, several weeks after the [May 31] incident in your classroom and several days after the last day of school. You sent an email to the parents of the only black student who was in your class during the confrontation over Racism as Sin. You attached a copy of the very detailed email that you had sent on June 4th to me and the parents of the white student whom you allege made the disparaging comments. You attached to that email to those parents of a black Jamaican transfer student a copy of my 'reprimand' to you; and you attached your rebuttal.
>
> Arguably you have a right to share that information, but in that email to those unsuspecting parents on June 26, 2018, you specifically describe me, Sr. Patricia, the President of Notre Dame Academy as being "racially biased", a racist.

63.     In her letter to me dated July 23, 2018, Sr. Patricia admits that I arguably had a right to send the June 26, 2018 email to the parents of the black student.

64. In her letter to me dated July 23, 2018, Sr. Patricia seems to belittle the black student by referring to her as a "transfer student." The relevance of her being a transfer student is unclear.

65. Sr. Patricia has created a work environment where a person of color can be summarily suspended, then discharged, for complaining about racial bias or racial insensitivity at their workplace. This sends an unlawful and chilling message to anyone else who may have similar concerns.

66. Thomas Rodes and Maureen Smith are two white teachers who have been publicly complaining about age and gender discrimination at St. Joseph by-the-Sea High School in Staten Island, New York, for at least two years now.

67. Like Notre Dame Academy, St. Joseph by-the-Sea operates under the auspices of the Archdiocese.

68. Like Notre Dame Academy, the teachers at St. Joseph by-the-Sea are members of the Federation of Catholic Teachers, the same union of which I am a member, and are therefore subject to the terms and conditions of the same Collective Bargaining Agreement as I am.

69. Thomas Rodes and Maureen Smith began publicly complaining about harassment and discrimination based on age and gender directed at them by Rev. Michael Reilly, Principal of St. Joseph by-the-Sea, some years ago. They filed a lawsuit against St. Joseph by-the-Sea and the Archdiocese in 2016.

70. Upon information and belief, Thomas Rodes and Maureen Smith are still gainfully employed by St. Joseph by-the-Sea. Their Title VII protected activity rights have been preserved by the Archdiocese.

71. I, on the other hand, have been summarily suspended without pay by Defendants because of my Title VII protected activity without so much as an investigation into whether my Title VII protected grievances have merit.

72. The St. Joseph by-the-Sea situation involving Thomas Rodes and Maureen Smith reveals that I am being treated disparately from other similarly situated white teachers within the purview of the Archdiocese.

73. On June 21, 2018, Sr. Patricia, using the school's Constant Contact email marketing software, published a job posting by email to multiple persons throughout the Notre Dame Academy community, which reads as follows: "Notre Dame Academy is seeking to hire a young man (preferably in late High School/early College) to work in the Maintenance Department over the summer. If you can recommend anyone, please contact Sr. Patricia Corley via email."

74. In that June 21, 2018 email, Sr. Patricia unlawfully specifies the age and sex of the employee she wished to hire in violation of Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act of 1967. Her ignorance or disregard for the law in this email is indicative of her hiring and employee management practices at Notre Dame Academy.

**Allegations**

75.    Notre Dame Academy unlawfully discriminated and retaliated against me for complaining to the Archdiocese about harassment and discrimination from Notre Dame Academy on December 5, 2017, thereby creating a hostile working environment for me.

76.    Notre Dame Academy unlawfully discriminated and retaliated against me by refusing to reprimand a student whom I said had made racially derogatory comments about black people in my class, or even investigate the May 31 incident, thereby undermining and diminishing my authority as the classroom teacher in discriminatory fashion and creating a hostile working environment for me.

77.    Notre Dame Academy unlawfully discriminated and retaliated against me by refusing to reach out to the student whom I said was victimized by being the only black student in a class where racially derogatory comments about black people were made by the white student during the May 31 incident, thereby undermining and diminishing my authority as the classroom teacher in discriminatory fashion and creating a hostile working environment for me.

78.    Notre Dame Academy unlawfully discriminated and retaliated against me by formally reprimanding me in writing for reporting the May 31 incident at all, thereby undermining and diminishing my authority as the classroom teacher in discriminatory fashion and creating a hostile working environment for me.

79.    Notre Dame Academy unlawfully discriminated and retaliated against me by directing me to withdraw my nomination of the black student involved in the May 31

incident for an Academic Achievement Award, based solely on her grades in my class, four days after I reported the May 31 incident to the Notre Dame Academy High School administration, thereby undermining and diminishing my authority as the classroom teacher in discriminatory fashion and creating a hostile working environment for me.

80.    Notre Dame Academy unlawfully discriminated and retaliated against me by formally reprimanding me for teaching my students about the Church teachings on racism and white privilege in my Theology classes, thereby undermining and diminishing my authority as the classroom teacher in discriminatory fashion and creating a hostile working environment for me.

81.    Notre Dame Academy unlawfully discriminated and retaliated against me by suspending me for asserting my rights and defending the rights of a black student in the school, thereby undermining and diminishing my authority as the classroom teacher in discriminatory fashion and creating a hostile working environment for me.

82.    Notre Dame Academy unlawfully discriminated and retaliated against me in violation of Title VII of the Civil Rights Act of 1964 by suspending me in violation of Section 7 of the National Labor Relations Act for sending the June 26, 2018 email. *Kinder-Care Learning Centers*, 299 N.L.R.B. 1171, 1177 (1990).

83.    The Archdiocese unlawfully discriminated and retaliated against me by treating me disparately from other similarly situated teachers within their purview, i.e., the white teachers who publicly complained about age and sex discrimination at St. Joseph by-the-Sea High School in Staten Island without getting suspended or discharged.

84.    The Archdiocese unlawfully discriminated and retaliated against me by failing to take any action whatsoever to remediate the discrimination and harassment which I reported to them on December 5, 2017, thereby creating a hostile working environment for me.

### Causes of Action

### Count One
### (Retaliation for Engaging in Protected Activities)

85.    The foregoing paragraphs are realleged and incorporated by reference herein.

86.    Defendants' conduct as alleged herein constitutes retaliation against me because I engaged in activities protected by Title VII and the ADEA. The stated reasons for Defendants' conduct were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

### Count Two
### (Racial Discrimination in Violation of Title VII of the
### Civil Rights Act of 1964, 42 U.S.C. §§ 2000e. *et seq.* )

87.    The foregoing paragraphs are realleged and incorporated by reference herein.

88.    Defendants' conduct as alleged herein constitutes discrimination based on race in violation of Title VII. The stated reasons for Defendants' conduct were not the true reasons, but instead were a pretext to hide Defendants' discriminatory animus.

**Count Three**
**(Age Discrimination in Violation of the Age**
**Discrimination in Employment Act (ADEA) 29 U.S.C. § 621)**

89.     The foregoing paragraphs are realleged and incorporated by reference herein.

90.     Defendants' conduct as alleged above constitutes discrimination based on Age discrimination in violation of ADEA. The stated reasons for Defendants' conduct were not the true reasons, but instead were a pretext to hide Defendants' discriminatory animus.

**Count Four**
**(Hostile and Abusive Working Environment)**

91.     The foregoing paragraphs are realleged and incorporated by reference herein.

92.     Defendants' conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII, and the ADEA. The stated reasons for Defendants' conduct were not the true reasons, but instead were a pretext to hide Defendants' discriminatory animus.

## Exhaustion of Federal Administrative Remedies

93.     I filed charges with the Equal Employment Opportunity Commission against Defendants on August 2, 2018. The Equal Employment Opportunity Commission has issued Notice of Right to Sue letters which I received on September 22, 2018. Copies of these documents are attached to this Complaint.

## Certification and Closing

94.     Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) contains factual contentions which all have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) otherwise complies with the requirements of Rule 11.

## Prayer for Relief

WHEREFORE, I request that this Court award to me:

   a)  judgment as to all claims herein;

   b)  reinstatement of my employment with Notre Dame Academy, with all attendant back pay, benefits, and other emoluments of employment;

   c)  the sum of $300,000.00 in compensatory damages suffered because of the discrimination, harassment, and retaliation, or whatever amount I am found to be entitled;

   d)  consequential and punitive damages to be determined at trial;

   e)  fees and expenses incurred in this action, including, without limitation, attorneys' and experts' fees and expenses;

   f)  pre-judgment and post-judgment interest as provided by law;

22

g)  any such other and further relief as this Court may deem just and proper.

## Jury Demand

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, I demand a trial by jury.

Dated: Staten Island, New York
       October 29, 2018

Respectfully Submitted,

Ramon K. Jusino (appearing *pro se*)
27 Amelia Court
Staten Island  NY  10310
(917) 502-0340
RKJusino@aol.com

23

EEOC Charge No. 520-2018-04574
Ramon K. Jusino v. Notre Dame Academy High School

Statement of Charging Party:

My name is Ramon K. Jusino. I am of Puerto Rican descent in a work environment that is almost entirely white, a male employed in a female-dominated work environment, over the age of 40 and amongst the oldest faculty members at my school, have several health issues which qualify as disabilities, and have previously complained to my employer about harassment and discrimination against me based on the above mentioned protected categories.

I have been employed as a lay high school teacher by Notre Dame Academy High School ("Respondent") since September 1, 1995. Respondent operates under the auspices and supervision of the Archdiocese of New York.

During the course of my employment with Respondent, I was subjected to unwarranted disciplinary memos into my performance file from May 1, 2015 through November 28, 2017. After grieving the aforementioned disciplinary write-ups through my union, the Federation of Catholic Teachers, Respondent agreed to remove the unfounded disciplinary memos from my file. On June 12, 2018 I was permitted to inspect my performance file to ensure that the unwarranted memos have been removed. I considered the entire harassment/discrimination matter to have been amicably resolved at that point.

However, on June 20, 2018, I was issued three new baseless disciplinary write-ups. I believe these new write-ups are in retaliation for my previous complaint of discrimination filed with the Archdiocese of New York on December 5, 2017. One of the write-ups of June 20, 2018 specifically advises me that I will be subject to far more scrutiny beginning in September, 2018. The June 20, 2018 memo does not clearly explain the connection between the baseless allegations it contains and the increased scrutiny it provides as a corrective measure.

Then, on July 23, 2018, I was issued a Notice of Suspension with intent to Discharge by Respondent. I believe this notice of suspension/discharge to be unlawfully retaliatory because it begins by explicitly referring to my December 5, 2017 harassment complaint by saying: "After almost a full school year of accusations, meetings and discussions, you engaged in one more activity which makes your continued employment at Notre Dame Academy impossible." It refers to my harassment complaint as "accusations." The meetings and discussions it refers to are the several meetings we had which included union officers, union lawyers, and representatives of the Archdiocese of New York throughout most of this past school year regarding my December 5, 2017 discrimination complaint. Respondent factored in my previous harassment/discrimination into its decision to discharge me. This is clearly unlawful.

As for the allegations in the July 23, 2018 notice of suspension/discharge, I issue these preliminary denials:

1. I never described anyone as a racist or as *being* racially-biased. I simply pointed out that Respondent handled one specific situation in a racially-biased manner and achieved a racially-biased outcome.

2. While it is a fact that Respondent did indeed take an award away from a black student and gave it to a white student, I never referred to anyone as *being* racially-biased or racist. I simply pointed out the racially-biased outcome of Respondent's decision to change its own rules regarding the distribution of the awards at the last second which resulted in the taking away of an award from a Black student which was then given to a less qualified White student.

3. I never called anyone any names or made any accusations of racism, *per se*. I simply pointed out documented facts, and passed along what a Black student told me regarding her own experiences at Notre Dame Academy High School.

4. I informed a Black student's parents, *not* the public at large, about racially charged derogatory statements which were made by a White student in the Black student's presence in my class.

5. I never said that anyone is morally incapable of doing their job. I never said that anyone is mentally incapable of doing their job.

Based on the above, I believe Respondent's heightened scrutiny of my performance and the June 20, 2018 unwarranted disciplinary write-ups are in retaliation for my previous complaint of discrimination, in violation of Title VII of the Civil Rights Act of 1964. I further believe that Respondent's July 23, 2018 notice of suspension/discharge indicates unlawful retaliatory motive in violation of Title VII of the Civil Rights Act of 1964.

I have read the above statement and I declare, under penalty of perjury, that the foregoing is true and correct, to the best of my knowledge, information and belief. Further, I certify that I am qualified and authorized to file this EEOC Statement of Charging Party.


Signature


Ramon K. Jusino

August 2, 2018
Date

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Ramon Jusino<br>27 Amelia Court<br>Staten Island, NY 10310 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

| | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2018-04574** | **Mabel Tso,**<br>**Investigator** | **(212) 336-3762** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

**Kevin J. Berry,**
**District Director**

September 20, 2018

*(Date Mailed)*

Enclosures(s)

cc:

**NOTRE DAME ACADEMY HIGH SCHOOL**
**134 Howard Avenue**
**Staten Island, NY 10301**

EEOC Charge No. 520-2018-04575
Ramon K. Jusino v. The Archdiocese of New York

Statement of Charging Party:

My name is Ramon K. Jusino. I am of Puerto Rican descent in a work environment that is almost entirely white, a male employed in a female-dominated work environment, over the age of 40 and amongst the oldest faculty members at my school, have several health issues which qualify as disabilities, and have previously complained to my employer about harassment and discrimination against me based on the above mentioned protected categories.

I have been employed as a lay high school teacher by Notre Dame Academy High School ("Respondent's school") since September 1, 1995. According to Article I(E) and Article II of the Collective Bargaining Agreement which governs the terms of my employment, Notre Dame Academy High School operates under the auspices and supervision of the Archdiocese of New York ("Respondent"). The Archdiocese of New York is therefore appropriately named as a party in this matter.

During the course of my employment with Respondent's school, I was subjected to unwarranted disciplinary memos into my performance file from May 1, 2015 through November 28, 2017. After grieving the aforementioned disciplinary write-ups through my union, the Federation of Catholic Teachers, Respondent's school agreed to remove the unfounded disciplinary memos from my file. On June 12, 2018 I was permitted to inspect my performance file to ensure that the unwarranted memos have been removed. I considered the entire harassment/discrimination matter to have been amicably resolved at that point.

However, on June 20, 2018 I was issued three new baseless disciplinary write-ups. I believe these new write-ups are in retaliation for my previous complaint of discrimination filed with Respondent on December 5, 2017. One of the write-ups of June 20, 2018 specifically advises me that I will be subject to far more scrutiny beginning in September, 2018. The June 20, 2018 memo does not clearly explain the connection between the baseless allegations it contains and the increased scrutiny it provides as a corrective measure.

Then, on July 23, 2018, I was issued a Notice of Suspension with intent to Discharge by Respondent's School. I believe this notice of suspension/discharge to be unlawfully retaliatory because it begins by explicitly referring to my December 5, 2017 harassment complaint by saying: "After almost a full school year of accusations, meetings and discussions, you engaged in one more activity which makes your continued employment at Notre Dame Academy impossible." It refers to my harassment complaint as "accusations." The meetings and discussions it refers to are the several meetings we had which included union officers, union lawyers, and representatives of the Archdiocese of New York throughout most of this past school year regarding my December 5, 2017

discrimination complaint. Respondent's School factored in my previous harassment/discrimination into its decision to discharge me. This is clearly unlawful.

As for the allegations in the July 23, 2018 notice of suspension/discharge, I issue these preliminary denials:

1. I never described anyone as a racist or as *being* racially-biased. I simply pointed out that Respondent's School handled one specific situation in a racially-biased manner and achieved a racially-biased outcome.

2. While it is a fact that Respondent's School did indeed take an award away from a black student and gave it to a white student, I never referred to anyone as *being* racially-biased or racist. I simply pointed out the racially-biased outcome of Respondent's School's decision to change its own rules regarding the distribution of the awards at the last second which resulted in the taking away of an award from a Black student which was then given to a White student.

3. I never called anyone any names or made any accusations of racism, *per se*. I simply pointed out documented facts, and passed along what a Black student told me regarding her own experiences at Notre Dame Academy High School.

4. I informed a Black student's parents, *not* the public at large, about racially charged derogatory statements which were made by a White student in the Black student's presence in my class.

5. I never said that anyone is morally incapable of doing their job. I never said that anyone is mentally incapable of doing their job.

Based on the above, I believe Respondent's School's heightened scrutiny of my performance and the June 20, 2018 unwarranted disciplinary write-ups are in retaliation for my previous complaint of discrimination, in violation of Title VII of the Civil Rights Act of 1964. I further believe that Respondent's School's July 23, 2018 notice of suspension/discharge indicates retaliatory motives in violation of Title VII of the Civil Rights Act of 1964.

I have read the above statement and I declare, under penalty of perjury, that the foregoing is true and correct, to the best of my knowledge, information and belief. Further, I certify that I am qualified and authorized to file this EEOC Statement of Charging Party.


Ramon K. Jusino

August 2, 2018
Date

EEOC Form 161 (11/16)                    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | | | |
|---|---|---|---|
| To: | Ramon Jusino<br>27 Amelia Court<br>Staten Island, NY 10310 | From: | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2018-04575** | **Mabel Tso,**<br>**Investigator** | **(212) 336-3762** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Kevin J. Berry*

September 20, 2018

**Kevin J. Berry,**<br>**District Director**                    *(Date Mailed)*

Enclosures(s)

cc:

    **ARCHDICOSE OF NEW YORK**<br>    **1011 First Avenue**<br>    **New York, NY 10022**